IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANGEL JACKSON, *as Trustee and Natural Guardian of minor H.D.P.*, **and ALLIE ELIZABETH PRESSLEY,**<br><br> *Plaintiffs*,<br><br>v.<br><br>EMILY REEVES PRESSLEY,<br><br> *Defendant*. | CIVIL ACTION NO.<br>5:22-cv-00311-TES |

## ORDER REMANDING CASE

  Plaintiffs originally filed this case in the Superior Court of Monroe County on August 1, 2022. [Doc. 1]. On August 26, 2022, then-Defendant Hartford Life and Accident Insurance Company[1] removed the case to this Court. In the Notice of Removal [Doc. 1], Hartford cited its basis for removal as § 502(a) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Specifically, Hartford argued that Plaintiffs' claims "seek relief that is available under § 502(a) of ERISA." [Doc. 1, p. 3 (citing 29 U.S.C. § 1132(a)(1)(B))]. Hartford argued that because Plaintiffs' claims were preempted by ERISA, this Court could exercise federal question jurisdiction under 29 U.S.C § 1132(e)(1) and 28 U.S.C. § 1331. Therefore, Hartford

---

[1] The Court dismissed Defendant Hartford Life and Accident Insurance Company pursuant to the parties' Consent Motion to Dismiss. *See* [Doc. 14]; [Doc. 15].

argued that removal was proper under 28 U.S.C § 1441(a). [Doc. 1, p. 4]. Importantly, none of the other parties challenged the removal.

After Hartford removed the case to this Court, the parties completed discovery and filed cross-motions for summary judgment. [Doc. 17]; [Doc. 19]. Following a preliminary review of the motions, the Court issued a show-cause order, inquiring into the basis for jurisdiction in this Court. [Doc. 20]. *See Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) ("Federal courts are obligated to inquire into subject-matter jurisdiction sua sponte . . ."). In that Order, the Court explained that to remove an ERISA § 502(a) action under federal question jurisdiction, (1) a plaintiff's claim must fall within the scope of ERISA § 502(a), and (2) the plaintiff must have standing to sue under ERISA. *Id.*

ERISA grants standing for its civil enforcement actions to "participant[s] or beneficiar[ies]." 29 U.S.C. § 1132(a)(1)(B). A beneficiary is defined as a person that—*by the terms* of the ERISA plan—may become entitled to a benefit. 28 U.S.C. § 1002(8). Under the arguments presented by both parties, this case arose because Plaintiffs were ***not*** named beneficiaries who may become entitled to benefits under the plan but should

have been.[2] Therefore, Plaintiffs lack standing to sue under ERISA.[3]

The Court also explained that Plaintiffs' arguments rest on the independent legal

---

[2] Although no party brought it to the Court's attention, it appears that Plaintiffs were named contingent beneficiaries at some point before Dale Pressley died. [Doc. 6-3, p. 10]. However, that does not change the standing analysis. The plan clearly listed Defendant Emily Pressley as the primary beneficiary to receive 100% of the funds. Defendant Emily Pressley was alive at the time of Dale Pressley's death; therefore, any contingent beneficiary assignment became meaningless, and Plaintiffs have no claim to any benefit <u>under the terms of the plan</u>. *See Metro. Life Ins. Co. v. Robinson*, No. 2:18-CV-11493, 2018 WL 6649968, at *6 (E.D. Mich. Dec. 19, 2018) ("[A]t the time of Decedent's death, the primary beneficiaries were alive and [the contingent beneficiary] was accordingly not "entitled to a benefit" under Decedent's employee benefit plan. Under the plain terms of ERISA, therefore, she is not a "beneficiary" and lacks standing to bring her [counterclaim]."); *Thrivent Fin. for Lutherans v. Warpness*, No. 16-CV-1321, 2017 WL 2929521, at *2 (E.D. Wis. July 10, 2017) ("Contingent beneficiaries are not entitled to the proceeds unless the primary beneficiary has predeceased the insured or is barred from receiving the proceeds for some other reason."); *Burton v. United States*, 95 F. Supp. 474, 478 (W.D. La. 1951), *rev'd on other grounds by U.S. on Behalf of Jones v. Williams*, 220 F.2d 46 (5th Cir. 1955) ("In ordinary life insurance, it is fairly well settled that if the principal beneficiary survives the insured, the former becomes entitled to the insurance and the rights of any contingent beneficiary are lost."); *Rogers v. Unionmutual Stock Life Ins. Co. of Am.*, 782 F.2d 1214 (4th Cir. 1986); *Reliable Life Ins. Co. v. Spurgeon*, 763 S.W.2d 674, 676 (Mo. Ct. App. 1988) ("The plain meaning of 'contingent beneficiary' is a 'secondary beneficiary under a life-insurance policy whose rights mature if the primary beneficiary predeceases the insured.' Webster's Third New International Dictionary (Unabridged) 493 (1976). Or, as stated in 17 Encyclopedia Americana 431, Life Insurance, 'Contingent beneficiaries ... are eligible to collect proceeds if the primary beneficiary is not living at the time of the death of the insured.'"); *Rossetti v. Hill*, 161 F.2d 549, 550 (9th Cir. 1947) ("But the widow, the direct beneficiary, was alive when insured died, and, therefore, by the terms of the policy the unqualified right to the insurance benefits vested in her at the first point of time occurring after insured's death."); *see also* 172 A.L.R. 642 (1948).

Even if Defendant Emily Pressley unfortunately dies before the insurance funds are distributed, her estate—not any contingent beneficiary—would be entitled to the policy proceeds. *Rogers*, 782 F.2d at 1216 n.1 ("Generally, absent provision in policy to the contrary, if primary beneficiary dies after insured, but before proceeds are paid, estate of primary beneficiary, not contingent beneficiary, is entitled to proceeds."); *Bair v. Willis*, 129 S.E.2d 774, 776 (Ga. 1963) ("Once the beneficiary survives the insured and acquires a vested right, nothing can disturb his vested right to the proceeds, and if he dies, nothing can disturb said vested right from passing to the representative of his estate.").

[3] Even if the Court is wrong and Plaintiffs do have ERISA standing, claims under 29 U.S.C. § 1132(a)(1)(B) may be brought in state or federal courts. *See* 29 U.S.C. § 1132(e). Therefore, remand is still appropriate. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[Jurisdictional] uncertainties are resolved in favor of remand."); *Paxton v. Georgia Power Co.*, No. 4:22-CV-00081-TES, 2022 WL 17834062, at *2 (M.D. Ga. Dec. 21, 2022) ("Whenever there are uncertainties of a federal court's exercise of subject-matter jurisdiction, remand is the appropriate course of action.").

duty of Dale Pressley to continue to name his children as beneficiaries. Such an independent legal duty can also divest a federal court of jurisdiction. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (discussing that for an action to be preempted by ERISA, and to give rise to federal question jurisdiction, the cause of action must fall "within the scope" of ERISA § 502(a)(1)(b)).

Lastly, the Court noted that Plaintiffs argue the underlying divorce decree qualifies as a "qualified domestic relations order" ("QDRO"), which would, according to Plaintiffs, "exempt the plan from Federal preemption." [Doc. 19-1, p. 4]; *see also* 29 U.S.C. § 1144(b)(7).

The Court also explained to the parties that if the Court did have jurisdiction over this case, ERISA and federal common law—not state law—would govern the dispute. *Variety Children's Hosp., Inc. v. Blue Cross/Blue Shield of Fla.*, 942 F. Supp. 562, 566 (S.D. Fla. 1996). That means ERISA's administrative exhaustion requirements would apply. *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992). Neither parties' summary-judgment motions argued federal law. Instead, both motions relied exclusively on Georgia law. So, the Court explained that if it had jurisdiction, the parties needed to reframe their arguments to focus on federal law.

Plaintiffs responded by filing a Motion to Remand [Doc. 21], agreeing with the Court's initial analysis—namely, that this Court lacks jurisdiction and it should remand the case to the Superior Court of Monroe County for further proceedings. [Doc. 21, p. 3

4

("Plaintiffs' cause of action against Defendant Emily Reeves Pressley arises solely under state law.")]. Plaintiffs also concede that they "are not beneficiaries *by the terms of the ERISA plan*." [*Id.* at p. 4]. Instead, "Defendant Emily Pressley is the named beneficiary." [*Id.* at p. 5].

Although no longer a party to the case, Hartford filed a Response [Doc. 23] to the Court's Order, asking the Court to "resolve the federal law issues before remanding the case to state court for resolution of outstanding state law issues." [Doc. 23, p. 9]. More specifically, Hartford asks the Court to determine whether the underlying divorce decrees is a qualified domestic relations order ("QDRO"). [*Id.*].

Defendant Emily Pressley responded by adopting Hartford's position and asking the Court to decide the QDRO dispute before remanding the case. *See* [Doc. 24, p. 2 ("Defendant's research at the time of removal, coupled with Hartford's Non-Party Response to Order to Show Cause (D23), which is herein adopted by Defendant, confirms this Court's jurisdiction over the federal questions presented in this case as to whether the Consent Final Judgment and Decree between the decedent and Plaintiff is a Qualified Domestic Relations Order which would exempt it from ERISA[.]")]. Defendant Emily Pressley does not contend that this Court has jurisdiction aside from deciding the QDRO issue.

## DISCUSSION

The Court need not replow old ground by explaining its view of the

5

jurisdictional issues. However, the Court finds it necessary to address the QDRO issue before remanding the case. If the divorce decree is a QDRO, then Plaintiffs would be considered beneficiaries for purposes of ERISA standing. If not, then Plaintiffs do not have standing, and this Court lacks jurisdiction.

As with any analysis, it is best to start with the text of the document itself—here, the "Consent Final Judgment and Decree" finalizing the divorce between Angel Pressley and Dale Pressley issued by the Bibb County Superior Court on December 28, 2011. [Doc. 19-4]. In that Decree, the state court specifically enumerates that the proceeds of a 401-k account (not at issue in this case) would be "transferred through the entry of a Qualified Domestic Relations Order." [Doc. 19-4, p. 11]. The existence—or at least the consideration—of a *separate document* to be designated as a QDRO necessarily means that the parties to the divorce decree did not consider it to be a QDRO. Otherwise, they would not have referred to a soon-to-be-filed QDRO.

More importantly, the Decree does not meet the requirements of a QDRO under the ERISA statute:

> A domestic relations order meets the requirements of this subparagraph only if such order *clearly* specifies—
> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
> (iii) the number of payments or period to which such order applies, and

6

      (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C) (emphasis added). Here, the Decree does not clearly specify the plan to which the order applies. Instead, the Decree required Dale Pressley to "maintain a life insurance policy on his life which shall have a total face value of not less than $250,000.00 and shall name the minor children of the parties as the sole and irrevocable beneficiaries[.]" [Doc. 19-4, p. 10]. That text fails to name any specific plan to which the order would apply. It also doesn't reference any plan that was currently in place at the time of the Decree. Instead, it mentions only future plans that Dale Pressley needed to maintain. That information is not specific enough to qualify the Decree as a QDRO. *USAble Life v. Brown*, No. 208-CV-442-WKW WO, 2009 WL 798950, at *3 (M.D. Ala. Mar. 24, 2009). Additionally, aside from failing to name a specific plan, the Decree also fails to specify the "name and mailing address of each alternate payee covered by the order." 29 U.S.C. § 1056(d)(3)(C)(ii). Therefore, the Court concludes that the underlying divorce decree is not a QDRO for the purposes of 29 U.S.C. § 1056(d)(3)(C).

      The parties agree that under the terms of the plan, Defendant Emily Pressley is the sole beneficiary entitled to benefits. Accordingly, federal law entitles her to receive the funds as outlined in the plan documents. However, there are still questions arising under Georgia law as to whether Defendant Emily Pressley may retain these funds once they are paid or whether she must surrender the money to the Plaintiffs. The Court

expresses no opinion on these state law issues—instead, they are decisions for a Georgia court to make.

Based upon the foregoing, the Court **REMANDS** this case to the Superior Court of Monroe County. The Court **TERMINATES** all pending motions in this case. The Clerk is **DIRECTED** to forward a copy of this Order to the Clerk of the Superior Court of Monroe County.

Because the ultimate dispute over the final disposition of the benefits is not yet resolved, the Clerk is **DIRECTED** to **TRANSFER** the policy funds[4]—and any associated interest that has accrued while held in the registry of this Court—to the registry of the Superior Court of Monroe County until the parties' claims are fully adjudicated.

**SO ORDERED**, this 29th day of March, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] Hartford deposited $275,397.26 into the registry of the Court on November 14, 2022.